# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

Christopher Ounjian,

    Plaintiff,

    v.

Globoforce, Inc., d/b/a Workhuman

    Defendant.

Case No.: 3:22-cv-04575-TKW-MJF

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................1

BACKGROUND .........................................................................4

    A.  The Parties ..................................................................4

    B.  The Allegations ..........................................................4

ARGUMENT .............................................................................6

**I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FLORIDA PRIVATE SECTOR WHISTLEBLOWER ACT.**...............7

    A. Plaintiff Fails to Allege that He Engaged in Statutorily Protected Activity .......................................................................8

        1.  Plaintiff's cited communications do not constitute objections or complaints about an actual violation of law.........10

        2.  The purportedly complained–of conduct does not amount to an actual violation of law. ..........................................12

    B.  Plaintiff Does Not Allege that He Suffered Any Retaliatory Personnel Action.........................................................17

    C.  Plaintiff Does Not Allege Causation.................................21

**II.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST WORKHUMAN UNDER FDUTPA.** ........................................21

    A.  Plaintiff Is Not a Consumer and Therefore Lacks Standing to Bring a Claim Against Workhuman Under the FDUTPA. .............22

    B.  Even If Plaintiff Had Standing He Does Not Plausibly State a Claim For Relief Under FDUTPA.....................................23

**III. PLAINTIFF FAILS TO STATE A CLAIM FOR WRONGFUL DISCHARGE UNDER THE "PUBLIC POLICY" EXCEPTION TO THE MASSACHUSETTS EMPLOYMENT AT-WILL RULE.**.............25

**IV.  ALL THREE OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE**. ...................................................................................27

**CONCLUSION**...................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................6, 7, 10

*Bryant v. Dupree*,
252 F.3d 1161 (11th Cir. 2001) ..........................................27

*C&C Int'l Comput. & Consultants, Inc. v. Dell Mktg. L.P.*,
No. 11-60734-CIV, 2011 WL 13217489 (S.D. Fla. Nov. 7, 2011)...................16

*Cannova v. Breckenridge Pharm., Inc.*,
No. 08-81145-CIV, 2009 WL 64337 (S.D. Fla. Jan. 9, 2009) ...........................23

*Catron v. City of St. Petersburg*,
658 F.3d 1260 (11th Cir. 2011) .............................................7

*Cemex Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*,
No. 3:16-cv-186-J-34JRK, 2018 WL 905752 (M.D. Fla. Feb. 15, 2018) ................................................................23

*Coastal Physician Servs v . Ortiz*,
764 So. 2d 7 (Fla. 4th DCA 1999)......................................13

*Cohen v. Office Depot, Inc.*,
184 F.3d 1292 (11th Cir. 1999), *opinion vacated in part on separate grounds*, 204 F3d 1069 (11th Cir. 2000) .............................................23

*Contrast Lemus v. Jones Lang Lasalle Ams., Inc.*,
No. 19–25243–Civ–COOKE/GOODMAN, 2021 U.S. Dist. LEXIS 44029 (S.D. Fla. Mar. 5, 2021)....................................11, 14

*Evey v. Creative Door & Millwork, LLC*,
No. 215CV441FTM29MRM, 2016 WL 1321597 (M.D. Fla. Apr. 5, 2016) ................................................................12, 15

*Fitz v. Pugmire Lincoln–Mercury, Inc.*,
    348 F.3d 974 (11th Cir. 2003) ..........................................................20

*Goodwin v. Am. Equip. Leasing*,
    No. 6:10-cv-1876-Orl-GJK, 2012 U.S. Dist. LEXIS 204349 (M.D.
    Fla. Aug. 29, 2012) ..........................................................................25

*GTE Prod. Corp. v. Stewart*,
    421 Mass. 22 (1995) .........................................................................26

*Hansen v. J.L. Hammett Intern., Inc.*,
    No. A 9800849, 1997 WL 1073649 (Mass. Super. Sept. 2, 1999)....................26

*L.S. ex rel. Hernandez v. Peterson*,
    982 F.3d 1323 (11th Cir. 2020) ........................................................27

*Hipp v. Liberty Nat. Life Ins. Co.*,
    252 F.3d 1208 (11th Cir. 2001) ........................................................19

*Kendall v. Thaxton Rd. LLC*,
    443 F. App'x 388 (11th Cir. 2011) .....................................................7

*Kertesz v. Net Transactions, Ltd.*,
    635 F. Supp. 2d 1339 (S.D. Fla. 2009)...............................................23

*Meehan v. Med. Info. Tech.*,
    488 Mass. 730 (2021) .......................................................................26

*Morgan Stanley & Co. Inc. v. Coleman (Parent) Holdings Inc.*,
    955 So. 2d 1124 (Fla. DCA 2007)......................................................16

*Muy v. Int'l Bus. Machines Corp.*,
    No. 4:19CV14-MW/CAS, 2019 WL 8161747 (N.D. Fla. June 5,
    2019) .............................................................................................16

*Nat. Answers, Inc. v. SmithKline Beecham Corp.*,
    529 F.3d 1325 .................................................................................22

*Obukwelu v. Tallahassee Mem'l Healthcare, Inc.*,
    No. 4:15CV55-MW/CAS, 2015 WL 11110552 (N.D. Fla. June 25,
    2015) .....................................................................................8, 9, 12

*OCE Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*,
    760 So. 2d 1037 (Fla. 2d DCA 200)..................................................13

*Padron v. Bell S. Telecomm., Inc.*,
    196 F. Supp. 2d 1250 (S.D. Fla. 2002) ............................................................11

*Raimbeault v. Accurate Mach. & Tool, LLC*,
    No. 14-CIV-20136, 2014 WL 5795187 (S.D. Fla. Oct. 2, 2014) ......................28

*Ramirez v. Bausch & Lomb, Inc.*,
    8:10-cv-2003-T-35TGW, 2015 WL 12805166 (M.D. Fla. Apr. 2,
    2015) ...............................................................................................................21

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. 2d DCA 2006) ...............................................................21

*Rutledge v. SunTrust Bank*,
    262 F. App'x 956 (11th Cir. 2008) ..............................................................8, 17

*Rutledge v. SunTrust Bank*,
    No. 8:05CV-–536T27TGW, 2007 WL 604966 (M.D. Fla. Feb. 22,
    2007), *aff'd*, 262 F. App'x 956 (11th Cir. 2008) ..............................................19

*Schaefer v. Seattle Serv. Bureau, Inc.*,
    No. 2:15-CV-444-FTM-38CM, 2015 WL 9031511 (M.D. Fla. Dec.
    16, 2015) .........................................................................................................25

*Scott v. Advanced Pharm. Consultants, Inc.*,
    No. 5:19CV571-RH-MJF, 2021 WL 5830037 (N.D. Fla. Nov. 4,
    2021) ...........................................................................................................8, 13

*SIG, Inc. v. AT&T Digital Life, Inc.*,
    971 F. Supp. 2d 1178 (S.D. Fla. 2013) ...........................................................24

*Smith v. Heritage Health Care Ctr.*,
    No. 4:17CV293-MW/CAS, 2018 WL 11412584 (N.D. Fla. July
    11, 2018) ...........................................................................................................9

*Stires v. Carnival Corp.*,
    243 F. Supp. 2d 1313 (M. D. Fla. 2002) .........................................................24

*Stubblefield v. Follett Higher Educ. Grp., Inc.*,
    2010 WL 2025996 (M.D. Fla. May 20, 2010) ......................................14, 15, 27

*Tyler v. Michaels Stores, Inc.*,
    464 Mass. 492 (2013) ......................................................................................16

*Wonders v. United Tax Grp., LLC*,
  No. 13-80148-CIV, 2013 WL 5817589 (S.D. Fla. Oct. 29, 2013).....................20

**Statutes**

Florida Comm. Fraud Act, FLA. STAT. § 817.034 ................................................9, 13

Federal Deceptive Trade Practices Act, FLA. STAT. §§ 501.201, *et seq.*..........*passim*

Florida Theft Statute, FLA. STAT. § 812.014..............................................................9

Florida Private Employee Whistleblower's Act, FLA. STAT. §§
  448.101, *et seq.* ....................................................................................*passim*

Massachusetts Consumer Protection Law, Mass. Gen. L. Ch. 93A)...................9, 13

**Other Authorities**

Fed. R. Civ. P. 8 ..................................................................................3, 22, 23

Fed. R. Civ. P. 9(b) ........................................................................................24

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 6

N.D. Fla. Local Rule 7.1 .................................................................................1

Defendant Globoforce, Inc., d/b/a Workhuman ("Workhuman" or the "Company") hereby moves to dismiss the Complaint of Plaintiff Christopher Ounjian ("Plaintiff") in its entirety for failure to set forth a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1 (the "Motion").  Pursuant to FLA. STAT. § 448.104, Workhuman further requests the Court enter an award for the attorney's fees and costs that Workhuman has incurred in filing this Motion.

## PRELIMINARY STATEMENT

In September 2021, Plaintiff, a former employee of Workhuman, resigned his position for a new opportunity following dissatisfaction with a corporate restructuring and associated lateral transfer opportunity, conflict with his supervisor, and purported disagreement with aspects of Workhuman's communications strategy. Now, eighteen months later, Plaintiff has filed this lawsuit.  The Complaint alleges that Plaintiff's decision to quit and the events leading up to it are somehow the result of "retaliation" for airing his disagreement with certain Company practices.  But even taking all of the wide–ranging allegations in his Complaint as true, Plaintiff's fictitious narrative of his employment history does not amount to any legally cognizable claim.  Each of Plaintiff's purported legal claims fails as a matter of law as a result of the numerous, independent pleading defects identified herein, including that Plaintiff: (1) fails to allege a prima facie case of retaliation; (2) does not have

standing to assert (and otherwise does not adequately plead) a claim of unfair and deceptive trade practices; and (3) improperly attempts to apply Massachusetts common law in a last-ditch effort to cobble together an actionable claim for wrongful discharge.

Specifically, Plaintiff's claim under the Florida Private Sector Whistleblower Act (Count 1) fails as a matter of law because Plaintiff fails to plead each of the three requisite elements: (1) that he reported a violation of a "law, rule, or regulation"; (2) that he suffered an adverse employment action; and (3) causation. Indeed, Plaintiff does not allege that he reported a violation of law, but rather alleges only that he asked questions, made suggestions, brainstormed and, at times, vented about what he perceived to be a customer-relations issue. Plaintiff further does not allege that he was terminated or demoted, or otherwise suffered any adverse employment action, but rather alleges only that he was offered a different position that would have given him access to a "score[] of new 'enterprise' clients" and that he did not want to take that new position because it would be too much work. He further admits that this offer for a new position was rescinded in response to Plaintiff's claims of retaliation, but that he still chose to resign shortly thereafter. In other words, at the time Plaintiff resigned from Workhuman, he held the same title as he did before the new job offer (the so-called "demotion"), which was no longer even on the table.

Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

claim (Count 2) similarly fails for a number of independent reasons.  As a threshold matter, Plaintiff—a former employee and *not* a consumer—has no standing to bring an FDUTPA claim against Workhuman—his former employer and *not* a business engaging with Plaintiff in "trade or commerce."   Plaintiff makes the conclusory allegation that the basis of his FDUTPA claim is "the persecution, adverse employment practices, and damaging falsehoods to which Defendant subjected him."   FDUTPA, however, creates a right of action only for consumers acting in trade or commerce and not for employees disgruntled with their former employers.  Furthermore, even assuming he has standing, Plaintiff fails to plausibly state a claim for relief under Fed. R. Civ. P. 8.   While it is difficult to understand the basis for Plaintiff's claim enough to lodge a complete response, at a minimum, to the extent that Plaintiff is attempting to ground his FDUTPA claim in the circumstances surrounding his pre–suit litigation demand letters, courts have uniformly held that such conduct falls outside of the scope of the FDUTPA.

Plaintiff's claim of constructive discharge under Massachusetts common law (Count 3) also fails as a matter of law.  Based on the allegations in the Complaint, Workhuman concedes that Massachusetts law does not apply.   But, even if Massachusetts law did apply, Plaintiff still does not state a claim for relief because Plaintiff's allegations do not amount to constructive discharge as a matter of law; among other things, he does not even come close to alleging that "the new working

conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."

For these reasons, addressed more fully below, all three of Plaintiff's counts fail as a matter of law, the Complaint should be dismissed in its entirety with prejudice, and Workhuman should be awarded its attorney's fees and costs.

## BACKGROUND

### A.    The Parties

Plaintiff Christopher Ounjian is a former employee of Workhuman, having worked there from June 2013 until he resigned on September 13, 2021.  Compl. ¶ 1. At the time of his resignation, Plaintiff had the title of Global Account Executive. *Id*.  Defendant Workhuman is the U.S. subsidiary of Globoforce Group PLC, an Irish public limited company, and is headquartered in Framingham, Massachusetts.  *Id.* ¶ 19.  Workhuman provides its clients, predominately corporations with large employee bases, with employee rewards and recognition services.  *Id.* ¶ 1.  Among other services, Workhuman implements and administers a cloud–based recognition platform for its customers to utilize within their own employee populations.  *Id.* ¶¶ 1, 24–.  More specifically, Workhuman's platform provides its customers' employees with the opportunity to earn recognition points to ultimately redeem for gift cards or merchandise sold on Workhuman's online store.  *Id.* ¶ 2.

### B.    The Allegations

The crux of Plaintiff's sprawling allegations seem to be that, beginning in

2019, he "became aware of . . . excessive and undisclosed backend markups" of goods sold at Workhuman's online store, that Workhuman did not identify to its customers the profit margin it may have received on goods sold at the store, and that Workhuman's failure to disclose its profit margins "seemed fraudulent" to him. Compl. ¶¶ 69–70.   On the other hand, however, Plaintiff also alleges that Workhuman's customers were aware of the alleged "hidden" markups (*id.* ¶ 214) and that he himself told customers on multiple occasions that "price[s] for items redeemed from the WH Store could be up to three times" fair market value (a characterization of item pricing that Workhuman denies in whole).   *Id.* ¶ 231 (alleging such a statement was made to "Client I" on June 30, 2021); *see also id.* ¶ 276 (alleging he "continued to send out proposals with the same disclosure language he had used for Client I" including "at least three such proposals to Client J, Client K, and Client L" between July and August 2021); *id.* ¶ 254 (alleging he sent his modified proposal language in to "Client O" on or about August 18, 2021).

Around this same time, on June 18, 2021, Plaintiff alleges that he was offered a new title as Senior Enterprise Sales Executive as part of a planned Workhuman reorganization.   Compl. ¶ 263.   While Plaintiff attempts to label this job offer a "demotion," he does not allege *how* it would have been a demotion and, to the contrary, admits that the new title would have "doubled his workload" by preserving his responsibility for "many large 'global accounts'" while giving him access to a

5

"score of new 'enterprise' accounts"—an opportunity that any salesperson would presumably relish. *Id.* ¶ 266.  Regardless, Plaintiff also admits that, on August 23, 2021, Workhuman withdrew this so–called demotion in response to Plaintiff's baseless claim of retaliation, and Plaintiff continued in his role as Global Account Executive. *Id.* ¶¶ 296, 298.

Plaintiff does not allege that Workhuman continued the alleged practices after the "demotion" was withdrawn, and rather states only that Workhuman "continued to give no indication that it would discontinue its misrepresentations about back end markups to the Company's clients and prospective clients and no indication that it would cease the undisclosed practice of extracting back end profit through markups." *Id*. ¶ 297.

September 13, 2021, Plaintiff voluntarily resigned. *Id.* ¶ 298.  Approximately one month before his resignation, on August 11, 2021, Workhuman notified Plaintiff that it would commence an investigation into his allegations of wrongdoing and commence interviews of Plaintiff and sales leadership. *Id.* ¶ 289.  Plaintiff responded by stating that he needed to consult with counsel before proceeding, and resigned shortly thereafter. *Id*. ¶ 290.

## ARGUMENT

A complaint must be dismissed under Rule 12(b)(6) when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[L]abels and conclusions" or a "formulaic

recitation of the elements of a cause of action" will not suffice. *Id.* at 555–56. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a plaintiff must plead "allegations plausibly suggesting (not merely consistent with)" a violation of the statute at issue. *Twombly*, 550 U.S. at 557; *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1264–65 (11th Cir. 2011) (plaintiff must plead more than a "sheer possibility that a defendant has acted unlawfully"). The *Twombly/Iqbal* pleading standard applies equally to allegations that go to the threshold issue of the plaintiff's standing to bring suit. *Kendall v. Thaxton Rd. LLC*, 443 F. App'x 388, 391 (11th Cir. 2011).

## I.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FLORIDA PRIVATE SECTOR WHISTLEBLOWER ACT.

Count 1 arises under the Florida Private Employee Whistleblower's Act, FLA. STAT. §§ 448.101, *et seq*. ("FWA"). The FWA provides, in pertinent part, that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has... [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." FLA. STAT. § 448.102(3). To state a claim under the FWA, a plaintiff must show that: "(1) []he engaged in statutorily protected expression, (2) []he suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity, and (3) there was some causal relation between the

events." *Rutledge v. SunTrust Bank*, 262 F. App'x 956, 958 (11th Cir. 2008). Plaintiff fails to plead each of the requisite elements of retaliation for all of the reasons laid out below.

### A. Plaintiff Fails to Allege that He Engaged in Statutorily Protected Activity.

To engage in statutorily protected activity under the FWA and avail himself of its protections, a plaintiff must show he "object[ed] or refuse[d] to participate in an actual violation of law," and not merely a suspected violation of law. *Scott v. Advanced Pharm. Consultants, Inc*., No. 5:19CV571-RH-MJF, 2021 WL 5830037, at *4 (N.D. Fla. Nov. 4, 2021) (noting a split in authority regarding whether an employee needs to object or refuse to participate in an actual violation of rule or merely a good-faith "allegation of a violation," and finding "[t]he better view, based on the statutory language, is that an employee must object to or refuse to participate in an actual violation"); *Obukwelu v. Tallahassee Mem'l Healthcare, Inc*., No. 4:15CV55-MW/CAS, 2015 WL 11110552, at *3 (N.D. Fla. June 25, 2015) (holding that "'protected expression' under [S]ection 448.102(3) requires objecting to an *actual* violation of the law" because "[a] more expansive reading would 'run afoul of the plain language of the statute and [would] expand beyond recognition this limited rule which simply allows employees to shed light on their employer's conduct, which is in violation of a law, rule or regulation, without fear of

retaliation'") (citations omitted)).[1]  The FWA defines "law, rule, or regulation" to include "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance *applicable to the employer and pertaining to the business*."  FLA. STAT. § 448.101 (emphasis added).

Plaintiff alleges that his internal questions and comments to various colleagues at Workhuman about its communications with customers about back end markup amount to complaints about "an actual violation of law" for purposes of his FWA claim.  Specifically, Plaintiff alleges that the conduct forming the basis for his complaints constitutes violations of (i) the Florida Communications Fraud Act ("FCFA"); (ii) the Florida theft statute (FLA. STAT.  § 812.014); (iii) the Massachusetts Larceny Statute; (iv) unspecified "anti-fraud laws of other states"; (v) the FDUTPA; (vi) Massachusetts Consumer Protection Law; and (vii) unspecified "consumer protection laws of other states."  Compl. ¶¶ 310–15.

---

[1] *Obukwelu* continues by finding this "plain reading" of § 448.102(3) "very persuasive," particularly in light of "similar legislation that contains markedly different language providing that an alleged violation suffices," such § 448.102(2) of the FWA, which identifies the provision of information regarding "an *alleged* violation of a law" to an appropriate governmental entity as a protected activity under the FWA.  2015 WL 11110552, at *3; *see also Smith v. Heritage Health Care Ctr.*, No. 4:17CV293-MW/CAS, 2018 WL 11412584, at *1 n.2 (N.D. Fla. July 11, 2018) ("This Court has previously ruled that the Plaintiff must object to an actual violation of law, rule, or regulation.").

Plaintiff's allegations are deficient in at least two material respects: they do not constitute objections about an "actual violation of law" and the reported conduct does not constitute an "actual violation of law."

        1.    <u>Plaintiff's cited communications do not constitute objections or complaints about an actual violation of law.</u>

Even accepting the allegations in the Complaint regarding Plaintiff's communications with his colleagues and managers at Workhuman as true, on their face those allegations cannot be interpreted as Plaintiff actually "objecting to" or "refusing to participate in" what he viewed as an actual violation of law.[2]  Although the Complaint repeatedly characterizes Plaintiff's communications as "complaints and objections" (*e.g.*, ¶¶ 22, 146), assigning that label is not enough.  *Twombly*, 550 U.S. at 55–56.  All the cited communications actually show is Plaintiff asking questions, making suggestions, brainstorming or, at times, venting about customer relations issues—not objecting to or complaining about an actual violation of law. *See, e.g.*, Compl. ¶ 97 (requesting feedback on how to respond to a prospective client); ¶ 105 (discussing what information to provide to a prospective client); ¶ 131 (advising Workhuman of a potentially disgruntled client); ¶¶ 183–84 (suggesting a different approach to communicating with prospective clients).  Even Plaintiff's August 9, 2021, email to Human Resources enumerates only a series of personal

---

[2] Indeed, Plaintiff concedes his annual salary was in excess of $1.09 million— underscoring the level at which Plaintiff was "participating" in the sales practices about which he now complains.  Compl. ¶ 300.

grievances followed by the blanket assertion that the Company has "portray[ed] its business model to prospective customers" in a "fraudulent way." *Id*. ¶ 285.

These types of interactions and merely articulating general grievances fall far short of the revelations of unlawful conduct necessary for protection under the FWA. *Contrast Lemus v. Jones Lang Lasalle Ams., Inc*., No. 19–25243–Civ–COOKE/GOODMAN, 2021 U.S. Dist. LEXIS 44029, at *11 (S.D. Fla. Mar. 5, 2021) (dismissing FWA claim where complaint contained only "ambiguous" allegations that employee called whistleblower hotline to report concern that manager's actions were "a violation of law and harmful to consumers") *with Padron v. Bell S. Telecomm., Inc*., 196 F. Supp. 2d 1250, 1255–56 (S.D. Fla. 2002) (finding "[t]he signing and sending of [a] letter detailing legal abuses by [defendant]" to constitute statutorily protected expression under the FWA). While an employee need not inform his employer of precisely which section of the Florida Statutes he believes are being violated, the employee is still required to make a contemporaneous factual allegation that a law has been broken.

As explained by the Middle District of Florida:

> The Court finds that regardless of which standard applies, plaintiff has failed to establish the first element of his FWA claim. The Complaint fails to allege that plaintiff objected to or refused to participate in defendant's allegedly illegal activity. **In fact, the Complaint does not contain allegations that plaintiff informed defendants that their conduct was illegal. According to the Complaint, plaintiff complained about the unsafe and**

> **hazardous working conditions he observed while
> employed by defendants.** On March 18, 2015, plaintiff
> met with defendants' Project's Supervisor, Eric Rickis and
> Kathy Graf from defendants' Human Resources
> Department to discuss the unsafe and hazardous working
> conditions. Plaintiff refused to continue working under the
> unsafe and hazardous conditions and defendants willfully
> retaliated against plaintiff by terminating his employment.

*Evey v. Creative Door & Millwork, LLC*, No. 215CV441FTM29MRM, 2016 WL

1321597, at *4 (M.D. Fla. Apr. 5, 2016) (emphasis added).  Because Plaintiff has

failed to allege that he communicated his supposed belief that Workhuman's

marketing practices were somehow illegal under any of the laws cited in the

Complaint, the FWA claim should be dismissed.

2. <u>The purportedly complained–of conduct does not amount to an
actual violation of law.</u>

Even assuming *arguendo* Plaintiff's communications amounted to actual

complaints or objections within the meaning of the FWA, he remains unable to

satisfy the FWA's "actual violation" standard.  *Obukwelu*, 2015 WL 11110552, at

*3 (dismissing FWA claim where complained-of practice was not an "actual

violation of law").  Plaintiff alleges that he took issue with the language Workhuman

used to describe (i) the average markup on items paid for with redeemed points to

prospective clients, and (ii) the continued useability of points not redeemed within a

certain amount of time.  Plaintiff's disagreement with Workhuman's marketing

materials, however, does not equate to an actual violation of law, particularly, where

12

he also alleges that he used language he personally drafted to inform customers about each point. *Scott*, 2021 WL 5830037, at *4 (finding FWA claim based on allegations that employer instructed pharmacy inspector to omit certain information from her inspection reports to "fall[] short" because employee "identified no law or rule that required [the at-issue] information to be reported at all").

Plaintiff improperly makes the conclusory assertion that his allegations amount to violations of (i) the FCFA; (ii) the Florida theft statute; (iii) the Massachusetts Larceny Statute; (iv) unspecified "anti–fraud laws of other states"; (v) the FDUTPA; (vi) Massachusetts Consumer Protection Law; and (vii) unspecified "consumer protection laws of other states." Compl. ¶¶ 310–15.   As an initial matter, Plaintiff fails to plead how these laws are "applicable to [Workhuman] and pertain[] to [its] business." FLA. STAT.   § 448.101(4).   The FDUTPA, for example, was created to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT.   § 501.202(2).   Plaintiff does not allege that any of his clients or the prospective clients in question were based in Florida.   It is accordingly unclear how they fall within the ambit of the FDUTPA's protections. *See Coastal Physician Servs v . Ortiz*, 764 So. 2d 7, 8 (Fla. 4th DCA 1999) (holding FDUTPA protects only in-state consumers); *OCE Printing Sys. USA, Inc. v. Mailers Data*

*Servs., Inc.*, 760 So. 2d 1037, 1042 (Fla. 2d DCA 200) (only in-state consumers can pursue a FDUTPA claim).[3]

The Middle District of Florida considered an analogous scenario in *Stubblefield v. Follett Higher Educ. Grp., Inc.*, 2010 WL 2025996 (M.D. Fla. May 20, 2010). In *Stubblefield*, the plaintiff alleged that his employer, which maintained a bookstore on a college campus for which he was the manager, violated the FWA by terminating his employment after he opposed a textbook pricing scheme that allegedly overcharged purchasers, constituted a breach of contract, and violated the FDUTPA. *Id.* at *1. Specifically, the employee contended that the textbook pricing scheme was unconscionable, unfair or deceptive because it misled and adversely affected the overcharged purchasers. *Id.* at *2.

The Court dismissed plaintiff's complaint with prejudice, finding there was no FDUTPA violation, and therefore, no viable FWA claim. The Court explained:

> To prove an actual violation of FDUTPA (and by extension, to succeed in his Whistleblower claim), [the plaintiff] must prove that [the employer's] underlying act of making a higher profit margin than specified in its contract with [the college] is, by itself, an unfair or deceptive trade practice. Though [the employer's] actions may have breached the contract with [the college], they do not constitute a violation of a law, rule, or regulation, such that the breach is

---

[3] Further, as recently noted by the Southern District of Florida, "[n]othing expressly contemplated in Section 501.201 suggests that FDUTPA can form the basis of whistleblower claims... [N]ot all purported employment-based complaints can serve as grounds for a violation of the FWA. To hold otherwise, would significantly expand the reach of FDUTPA and the FWA without any lawful basis to do so." *Lemus*, 2021 U.S. Dist. LEXIS 44029, at *14.

transformed into a FDUTPA violation. Consequently, [plaintiff's] Whistleblower claim fails as a matter of law.

*Id*. at \*3. Importantly, the Court also noted to that "to the extent that [the plaintiff] is alleging fraud in the execution of the contract, such a claim would be barred by the economic loss rule." *Id*. The same would be true here.

Plaintiff *also* fails to explain how Workhuman violated any of the other laws and statutes cited in the Complaint or how they pertain to Workhuman's business. Instead, the Complaint merely lists the laws alongside conclusory statements such as that "Defendant knowingly obtained the property of Client Employees with the intent to appropriate the property to its own use." Compl. ¶ 311. But "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' are not sufficient to withstand a motion to dismiss." *Evey*, 2016 WL 1321597, at \*6 (citing *Iqbal*, 556 U.S. at 678)). This too is exactly what the court found in *Stubblefield* in dismissing the case with prejudice. *See Stubblefield*, 2010 WL 2025996, at \*4 (dismissing Plaintiff's FWA claim based on the "conclusory statement" that defendant's actions violated "state and federal laws prohibiting theft and fraud").

The parallels between *Stubblefield* and Plaintiff's circumstances are striking. Plaintiff alleges that Workhuman was not fully transparent with its clients regarding the costs of the recognition programs as if its clients are not sophisticated entities that enter into detailed contracts with Workhuman with the benefit of counsel.

15

Further, any such contracts would govern any dispute between such clients and Workhuman.  Regardless of whether such a conjectural dispute exists (Workhuman is confident it does not), Plaintiff cannot convert a client's hypothetical breach of contract claim into a violation of the FDUTPA or "anti-fraud laws of other states," and thus cannot establish a FWA claim.  *C&C Int'l Comput. & Consultants, Inc. v. Dell Mktg. L.P.*, No. 11-60734-CIV, 2011 WL 13217489, at *2 (S.D. Fla. Nov. 7, 2011) (noting that "breach of contract claims may not be converted into FDUTPA claims").  Furthermore, the Complaint does not allege, nor can Plaintiff show, that Workhuman's clients have suffered an injury or "actual damages," which are generally a required element of the laws to which Plaintiff cites.  *Muy v. Int'l Bus. Machines Corp*., No. 4:19CV14-MW/CAS, 2019 WL 8161747, at *2 (N.D. Fla. June 5, 2019) (dismissing FDUTPA claim where it was not alleged how consumer was financially deprived and, absent such showing, "it would be impossible for Plaintiff to allege what the *value between* what was promised and what was delivered was") (internal citations omitted).[4]

---

[4] *See Tyler v. Michaels Stores, Inc.,* 464 Mass. 492, 501–02 (2013) (Complaint "must allege that the plaintiff has been 'injured' by the act or practice claimed to be unfair or deceptive" under Massachusetts Consumer Protection law; *see also Morgan Stanley & Co. Inc. v. Coleman (Parent) Holdings Inc*., 955 So. 2d 1124, 1132 (Fla. DCA 2007) ("Damage is of the very essence of an action for fraud or deceit. Without proof of actual damage the fraud is not actionable.") (internal citations omitted).

**B.**   **Plaintiff Does Not Allege that He Suffered Any Retaliatory Personnel Action.**

Plaintiff's FWA claim fails for the independent reason that he does not and cannot plead that he suffered "a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity." *Rutledge*, 262 F. App'x at 958. To establish this element, a plaintiff must show a "***retaliatory personnel action***," which is defined as "the discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment." FLA. STAT. § 448.101(5). Plaintiff alleges in the Complaint that he was constructively discharged (¶ 324) and thus must show that Workhuman "imposed conditions that were so intolerable that a reasonable person would be compelled to resign." *Rutledge*, 262 F. App'x at 958–59.

Plaintiff's attempts to shoehorn his voluntary resignation into a constructive discharge in an effort to satisfy his prima face case fall far short of the high bar imposed by Florida law. As an initial matter, Plaintiff's contention that Workhuman made a "demand" (Compl. ¶ 296) that he accept a "demotion from a Global Account Executive to [a Senior] Enterprise Account Executive" in "retaliation" (*id.* at ¶ 285) for his purported opposition to the Company's marketing materials defies logic. In addition to still being "responsible for many large 'global accounts'" (*id*. ¶ 266) the new Senior Enterprise Account Executive role would have provided Plaintiff with

access to "scores of new 'enterprise' accounts" (*id*.)—something Workhuman certainly would not have offered if it maintained any concerns about Plaintiff's communications with prospective clients.

Regardless, Plaintiff concedes that the purported "demotion" was ultimately withdrawn (*id.* ¶ 296) such that he faced no changes in the condition of his employment, and thus rests his claim wholly on the contention that he was "[f]aced with the choice of leaving [Workhuman] or continuing to participate in fraud and deception" (*id.* ¶ 298). Importantly, however, he does not allege that he was asked to "continu[e] to participate in fraud and deception" before deciding to resign, or that he was ever asked to change his practice of customizing his own marketing materials to contain the language he was comfortable using (*see id*. ¶¶ 184–92), and instead, alleges only that Workhuman "gave no indication" that it would stop its alleged fraudulent and deceptive practices. *Id.* ¶ 297. This absence of evidence is not enough to support his claim.

Moreover, notably absent from the Complaint are any allegations to suggest that Workhuman specifically directed Plaintiff to make illegal misrepresentations about any of Workhuman's business practices. To the contrary, Plaintiff concedes that he was empowered to send promotional materials to prospective clients that included his own edits to the description of the "back end markup." *See, e.g., id*. ¶¶ 184–92. For example, Plaintiff concedes that he "received no direction in response

to his inquiries about what to put into the Client H proposal with regard to back end markups for merchandise" and thus "disclosed that merchandise paid for with Points might cost up to three times the FMV," adding "[Workhuman] was fully aware of the new disclosure he was starting to use in his proposals." *Id.* ¶¶ 191–92.  In other words, though Plaintiff alleges that Workhuman proposed various model responses to customer inquiries, Plaintiff does not allege he was ever required to adopt their use and, to the contrary, concedes he was free to modify customer communications to fit his preferences.  *See, e.g., id.* ¶¶ 184–92.  And regardless, Workhuman's proposed responses, as alleged, do not amount to illegal misrepresentations on their face.

At most, the facts pled suggest Plaintiff resigned due to differences in opinion concerning appropriate marketing practices. Florida law, however, requires far more to state a claim under the FWA.  In fact, even an actual hostile work environment under Florida law is insufficient to prove constructive discharge.  *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1231 (11th Cir. 2001) (holding that "[t]he standard for proving constructive discharge ***is higher than the standard for proving a hostile work environment***") (emphasis added); *Rutledge v. SunTrust Bank*, No. 8:05CV–536T27TGW, 2007 WL 604966, at *6 (M.D. Fla. Feb. 22, 2007), *aff'd*, 262 F. App'x 956 (11th Cir. 2008) ("Plaintiff's subjective feelings, including her 'severe stress,' about the conditions of her employment, are irrelevant.").

19

In *Wonders v. United Tax Grp., LLC*, No. 13-80148-CIV, 2013 WL 5817589 (S.D. Fla. Oct. 29, 2013), for example, the Court granted summary judgment to the defendant employer on the plaintiff's FWA claim where it found that "no reasonable juror could find that Plaintiff was constructively discharged" where she faced a harassing work environment but "the undisputed facts" showed that her managers offered her a "simple solution"—to transfer from the West Palm Beach office to the nearby Jupiter office, where she was already working one day per week. *Id*. at *6. The facts as pled suggest that had Plaintiff not resigned, he could have continued to use the language that he drafted. Plaintiff cannot now claim that he faced an intolerable work environment that no reasonable person could continue working in.

Nor can Plaintiff point to any other retaliatory personnel action taken by Workhuman. He was not discharged, suspended or demoted, and no adverse employment action was taken against him in the terms and conditions of employment. Plaintiff thus fails to make the required showing of retaliatory employment action to state a claim. *See Fitz v. Pugmire Lincoln–Mercury, Inc.,* 348 F.3d 974, 977–78 (11th Cir. 2003) (holding that a withdrawal of a reprimand, an offer to transfer to another managerial role, two posted cartoons, suspicions of an unsubstantiated plot to terminate the plaintiff's employment, and an unsubstantiated allegation of unequal pay did not show constructive discharge).

20

### C.     Plaintiff Does Not Allege Causation.

Finally, Plaintiff fails to state an FWA claim for the independent reason that he does not sufficiently allege causation.  Plaintiff has the burden of proving that "but for" his "protected activity," he would not have suffered an adverse employment action.  *Ramirez v. Bausch & Lomb, Inc.*, 8:10-cv-2003-T-35TGW, 2015 WL 12805166, at *5 (M.D. Fla. Apr. 2, 2015).  But Plaintiff does not plead but for causation at all.  In fact, Plaintiff alleges that one of the reasons he resigned was because he did not want to continue to work with one of his colleagues.  Compl. ¶ 298 ("Faced with the choice of leaving WH or continuing to participate in fraud and deception, *and continuing to work with [his supervisor]* . . . Plaintiff resigned on September 13, 2021" (emphasis added).  In short, resigning because he did want to continue to work with someone is not actionable under the FWA.

## II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST WORKHUMAN UNDER FDUTPA.

Count 2 of the Complaint is based on an alleged violation of the FDUTPA.  A claim under the FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).  The purpose of the FDUTPA is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair practices in the conduct of

any trade or commerce." *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (quoting FLA. STAT. § 501.202(2)).

Plaintiff alleges that Workhuman violated the FDUTPA with respect to Plaintiff as an employee by "persecuting Plaintiff with adverse employment practice [sic] and damaging falsehoods on claims that are utterly false and contrived – all to overwhelm him to force him to abandon or settle cheaply his whistleblower claims." Compl. ¶ 327.  As a gating issue, Plaintiff does not have standing to bring an FDUTPA claim.  Put simply, Plaintiff is an employee dealing with his former employer, and not a consumer dealing in trade or commerce.  But even if Plaintiff could bring a cause of action against Workhuman for an FDUTPA violation, his vague, conclusory allegation of persecution and damaging falsehoods does not satisfy the pleading requirements of Fed. R. Civ. Pro. 8.

### A.   Plaintiff Is Not a Consumer and Therefore Lacks Standing to Bring a Claim Against Workhuman Under the FDUTPA.

First, Plaintiff has no standing to bring a claim against Workhuman under the FDUTPA.  Plaintiff's attempt to use the FDUTPA as a basis for an adverse employment action requires an unreasonable, expansive interpretation of that statute. While the statute was amended in 2001 to allow a broader base of complainants injured by violations of FDUTPA to seek damages, FDUTPA is fundamentally a consumer protection statute that provides protection for "the consuming public" against unfair practices in the conduct of "trade or commerce."  *See Nat. Answers,*

*Inc.*, 529 F.3d at 1333; *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009) (analyzing the legislative history surrounding the amendment and finding it suggests that the change served to "clarify that businesses, just like individuals, could obtain monetary damages in FDUTPA cases" and identifying a line of post-amendment U.S. District Court cases that have held only consumers may bring a private suit under the FDUTPA).    In other words, the FDUTPA applies to ***consumers***, not employees bringing employment claims against their employers. *See, e.g., Cemex Constr. Materials Fla., LLC v. Armstrong World Indus., Inc*, No. 3:16–cv–186–J–34JRK, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (the terms "unfair practice" and "deception" as used under FDUTPA require facts that plausibly suggest harm to a consumer); *Cannova v. Breckenridge Pharm., Inc*, No. 08–81145–CIV, 2009 WL 64337, at *3 (S.D. Fla. Jan. 9, 2009) (only a consumer may bring a private suit under FDUTPA).  As a result, Count 2 must be dismissed for Plaintiff's failure to satisfy this threshold question.

## B.    Even If Plaintiff Had Standing He Does Not Plausibly State a Claim For Relief Under FDUTPA.

Second, even if Plaintiff has standing, his Complaint fails to meet the pleading requirements of Fed. R. Civ. P. 8, which require that the pleading "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Cohen v. Office Depot, Inc*., 184 F.3d 1292, 1297 (11th Cir. 1999), *opinion vacated*

*in part on separate grounds*, 204 F.3d 1069 (11th Cir. 2000).[5]  Here, the conduct upon which Plaintiff bases his FDUTPA claim is entirely unclear, as the Complaint states only that "Defendant has engaged in unconscionable trade practices by persecuting Plaintiff with adverse employment practice and damaging falsehoods on claims that are utterly false and contrived – all to overwhelm him to force him to abandon or settle cheaply his whistleblower claims."  Compl. ¶ 327.

Plaintiff does not specify what Workhuman actually did to damage him under the FDUTPA other than allegedly spread unidentified "damaging falsehoods on claims that are utterly false and contrived," leaving Workhuman to simply guess at the statements to which Plaintiff is referring.  *SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1195 (S.D. Fla. 2013) ("[T]o satisfy Rule 8's pleading standards, Plaintiffs' FDUTPA allegations must "specify [Defendants'] individual actions and how they constitute a violation of FDUPTA.").  Plaintiff also neither alleges how he was "persecuted with an adverse employment practice," nor why such persecution amounts to an "unconscionable trade practice."  To the extent the

---

[5] Given that Plaintiff's claim rests on the dissemination of alleged unspecified "falsehoods," it is also likely subject to the heightened pleading requirements imposed by Rule 9(b), which require Plaintiff to state with particularity the circumstances constituting mistake.  *See Stires v. Carnival Corp.,* 243 F. Supp. 2d 1313, 1322 (M. D. Fla. 2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b).").  Plaintiff's claim falls woefully short of this standard, as he does not plead the who, what, when, where of his claim.

24

alleged "utterly false and contrived" claims refer to Plaintiff's pre-suit communications with Workhuman regarding his purported "whistleblower claims," such exchanges decidedly fall well outside the ambit of FDUTPA. *Schaefer v. Seattle Serv. Bureau, Inc*., No. 2:15-CV-444-FTM-38CM, 2015 WL 9031511, at *5 (M.D. Fla. Dec. 16, 2015) ("Courts have found that a plaintiff's attempt to include pre-suit demand letters within the scope of the term 'trade or commerce' simply misses the mark.").

Moreover, Plaintiff fails to allege that any of these alleged deceptive or unfair actions took place within the territorial boundaries of the State of Florida, as is required by the statute. *Goodwin v. Am. Equip. Leasing*, No. 6:10-cv-1876-Orl-GJK, 2012 U.S. Dist. LEXIS 204349, at *9 (M.D. Fla. Aug. 29, 2012) (dismissing FDUPTA claim because "other than stating that [defendant] is a resident of Florida, the Complaint contains no allegations of any kind connecting the offending conduct to the territorial boundaries of the state of Florida"). As a result, Plaintiff's FDUPTA claim fails for these additional reasons alone.

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR WRONGFUL DISCHARGE UNDER THE "PUBLIC POLICY" EXCEPTION TO THE MASSACHUSETTS EMPLOYMENT AT-WILL RULE.

Count 3 pleads in the alternative that Plaintiff suffered an actionable "wrongful discharge" should the Court find that Massachusetts law applies. Massachusetts law recognizes only a "limited exception" to the employment at-will

25

rule when "employment is terminated contrary to a well-defined public policy." *Meehan v. Med. Info. Tech*., 488 Mass. 730, 732 (2021) (citation omitted). The public policy exception is recognized when an employee is discharged or constructively discharged because he "refus[ed] to do that which the law forbids." *Id*. at 733. Massachusetts law requires that a plaintiff pleading constructive discharge show that "the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *GTE Prod. Corp. v. Stewart*, 421 Mass. 22, 33–34 (1995). "In other words, the employer's actions must have the purpose and effect of forcing the employee to quit." *Hansen v. J.L. Hammett Intern., Inc*., No. A 9800849, 1997 WL 1073649, at *6 (Mass. Super. Sept. 2, 1999). "This is an evaluative determination made by applying an objective standard, not a state–of–mind standard." *Id*.

Applying this standard, Plaintiff's wrongful discharge claim under Massachusetts law fails for the same reasons as under the FWA. The Complaint does not set forth facts from which it can be inferred that "a reasonable person in [Plaintiff's] shoes would have felt compelled to resign." *Stewart*, 421 Mass. at 33–34. Instead, Plaintiff concedes that he was permitted to make adjustments to the marketing language he perceived to constitute "illegal misrepresentations" (Compl. Compl. ¶¶ ¶¶ 184–92; that Workhuman agreed to conduct an investigation into his

allegations (*id*. ¶¶ 289–90); and that after being told Workhuman would conduct an investigation, Plaintiff quit anyway (*id*.).   There is thus no basis for Plaintiff's allegations that he was forced to choose between "facilitating a violation of the law or resigning" (Compl. ¶ 339), and Count III fails accordingly.

## IV.   ALL THREE OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

The Court should dismiss each one of Plaintiff's claims with prejudice because any potential amendment would be futile.  *See generally Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not, however, allow an amendment . . . (3) where amendment would be futile.").

As to Counts 1 and 3, Plaintiff voluntarily resigned and therefore did not suffer any adverse employment action as a matter of law.  *See supra* at 6.  The fact of Plaintiff's voluntary resignation cannot be cured in an amended pleading.  *See generally L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1328 (11th Cir. 2020) ("[W]e conclude that the district court was correct to dismiss these claims with prejudice because leave to amend would be futile.").

Count 1 should be dismissed with prejudice for the additional reason that Plaintiff did not, and cannot, allege that Workhuman's conduct violated an actual law, rule, or regulation.  *See supra* at 10-12.  As the court held in *Stubblefield*, this is cause for dismissal with prejudice because the court "cannot surmise how [defendant's] conduct violates a law, rule, or regulation."  2010 WL 2025996, at *4.

Plaintiff's Counts 2 fares no better.  As explained above, Plaintiff lacks standing to bring a FDUTPA claim because he is not a consumer of Workhuman's goods or services and did not engage with Workhuman in the conduct of any trade or commerce.  *Supra* at 22-23.  Most relevant to this issue, Plaintiff will neither become a consumer of Workhuman's goods and services nor engage in any trade or commerce with Workhuman at any point, and thus, he will never have standing to bring a FDUTPA claim.  As a result, "[b]ecause Plaintiff[] [has] nowhere alleged that [he] engaged in the purchase of goods or services from [Defendant]," his FDUTPA claim should be dismissed with prejudice.  *See Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14-CIV-20136, 2014 WL 5795187, at *7 (S.D. Fla. Oct. 2, 2014) (dismissing plaintiff's FDUTPA claim with prejudice).

## CONCLUSION

For these reasons, Workhuman requests that the Court grant its Motion to Dismiss, with prejudice, and enter final judgment in its favor, including an award for any attorney's fees and costs associated with the filing of this Motion.

**GOODWIN PROCTER LLP**

*/s/ Jennifer L. Chunias*
Jennifer L. Chunias (*pro hac vice*)
Kate E. MacLeman (*pro hac vice*)
Dylan E. Schweers (*pro hac vice*)
100 Northern Avenue
Boston, MA 02210
jchunias@goodwinlaw.com

28

kmacleman@goodwinlaw.com
dschweers@goodwinlaw.com
May 23, 2022                            617-570-1000

**HOLLAND & KNIGHT**

/s/ *Nathan A. Adams*
Nathan A. Adams, IV
Florida Bar No.: 90492
315 South Calhoun Street, Suite 600
Tallahassee, FL 323001
Nathan.adams@hklaw.com
850-224-7000

***ATTORNEYS FOR DEFENDANT***

## LOCAL RULE 7.1(c) CERTIFICATION

The undersigned certifies pursuant to Local Rule 7.1(c), that the moving party conferred in good faith with opposing counsel regarding the relief requested herein during a videoconference held on April 15, 2022 and via email on May 20, 2022, and the parties could not resolve the issues raised herein.

*/s/ Jennifer L. Chunias*

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this brief contains 6,878 words in compliance with Local Rule 7.1(F).

*/s/ Jennifer L. Chunias*