UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**CHRISTOPHER OUNJIAN**,

    **Plaintiff**,

v.                                          Case No. 3:22cv4575-TKW-HTC

**GLOBOFORCE, INC.** d/b/a
Workhuman,

    **Defendant**.

_____/

## **ORDER OF DISMISSAL**

This case is before the Court based on Defendant's motion to dismiss (Doc. 21). Upon due consideration of the motion, Plaintiff's response in opposition (Doc. 27), Defendant's reply (Doc. 33), and the complaint (Doc. 1), the Court finds that the motion is due to be granted.

### **Facts**

Plaintiff worked for Defendant as a Global Account Executive from June 2013 until his alleged "forced resignation" in September 2021.

Defendant provides employee reward and recognition programs to large corporations and other clients, including a program through which the clients' employees receive points from their employers that are redeemable for merchandise

or gift cards sold on Defendant's online store. Plaintiff's job was to sell these programs.

Defendant is headquartered in Massachusetts, but Plaintiff performed his work from Florida. He earned over $1 million per year as a Global Account Executive.

Starting in March 2019, Plaintiff became concerned about Defendant's alleged "false and deceptive" practices concerning the price markups on items available for purchase on Defendant's online store. He expressed his concerns about these practices to his supervisors and others in Defendant's management on numerous occasions in 2019, 2020, and 2021.

Plaintiff claims that after he started expressing his concerns about Defendant's business practices to management, he was told to remain silent and to continue to provide "misleading" information to prospective clients. Plaintiff remained uncomfortable with Defendant's business practices, and the proposals he submitted to prospective clients in 2020 and 2021 included "more truthful information" that did not "hew completely to the 'Company Line.'"

Plaintiff claims that his efforts to provide more truthful disclosure language to prospective clients led to retaliation—primarily from Vice President of Sales Tom Vitkofsky. Specifically, Plaintiff claims that in July and August 2021, Vitkofsky

threatened to fire him if he did not accept a demotion;[1] levied unwarranted criticism about Plaintiff's performance, attitude, and "negativity"; and "misused" confidential health information about Plaintiff's family.[2]  The "threatened demotion" was withdrawn in late-August 2021, after Plaintiff's attorney sent a letter to Defendant's in-house counsel "laying out Plaintiff's whistleblower retaliation claims."

Plaintiff resigned on September 13, 2021.  He claims that his resignation was a constructive discharge because he "was left no choice but to resign."  More specifically, Plaintiff claims that he was compelled to resigned because he was "[f]aced with the choice of leaving [Defendant] or continuing to participate in fraud and deception, and continuing to work with Vitkofsky, who was one of the principal people who had retaliated against him."

Plaintiff got another job after he resigned, but his total annual compensation is now "only $350,000."

---

[1]  Defendant disputes that the position Plaintiff was offered—Senior Enterprise Sales Executive—was a "demotion."  However, at this stage of the case, the Court is required to accept as true Plaintiff's allegation that the position would have been a demotion—or at least that it would have been less desirable for him because it would have substantially increased his workload, potentially required more travel, and "impinged significantly on his ability to balance work with the needs of his family."

[2]  Specifically, Plaintiff claims that after he told Vitkofsky that his wife was scheduled to have "major surgery" and that he was "dealing with other 'very serious' health issues in his family," Vitkofsky used that information to try to get him to accept the demotion or take a medical leave of absence and he also shared the information with an employee in the human resources department who thereafter made a "'check in' call" to Plaintiff.

## Procedural Background

In March 2022, Plaintiff filed suit against Defendant in this Court based on diversity jurisdiction under 28 U.S.C. §1332(a). The complaint spans 74 pages and 341 paragraphs—including 315 paragraphs of "factual background"—and it asserts three claims: violation of the Florida Private Sector Whistleblower Act (FWA)[3] (Count 1); violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)[4] (Count 2); and wrongful discharge under Massachusetts law (Count 3). The complaint seeks damages for lost wages (allegedly totaling $14.9 million), additional damages for the "emotional harm" Plaintiff suffered "not only from [Defendant's] effort to force him into dishonest business practices, but also from the way in which the health of family members was used to make threats against him," and attorney's fees and costs.

Defendant responded to the complaint with a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and a motion to stay discovery. The Court granted the motion to stay pending disposition of the motion to dismiss because, after taking a "preliminary peek" at the motion to dismiss, the Court determined that it was likely to be granted. *See* Doc. 25.

---

[3] §448.102, Fla. Stat.

[4] §§501.201 - .213, Fla. Stat.

The motion to dismiss is fully briefed and is ripe for a ruling. No hearing is necessary to rule on the motion.

## Analysis

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing the motion to dismiss, the Court must accept the complaint's well-pleaded factual allegations as true and construe them, along with the reasonable inferences they create, in the light most favorable to the plaintiff. *Id.* at 678-79.

### FWA Claim (Count 1)

The FWA prohibits an employer from taking "retaliatory personnel action" against an employee because the employee "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." §448.102(3), Fla. Stat. "Retaliatory personnel action" is defined as "the discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment." §448.101(5), Fla. Stat.

5

To state a claim under the FWA, a plaintiff must plausibly allege sufficient facts to show that "(1) [ ]he engaged in statutorily protected expression; (2) [ ]he suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity." *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 462 (Fla. 2d DCA 2015) (quoting *White v. Purdue Pharma, Inc.,* 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005)). Retaliatory discharge actions under the FWA are analyzed under the same standards as a Title VII retaliation claim. *See Butterworth v. Lab'y Corp. of Am. Holdings*, 581 F. App'x 813, 818 (11th Cir. 2014) (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950-51 (11th Cir. 2000)).

Here, starting with the second element, the complaint alleged that Plaintiff was [1] "constructively discharge[d]" and that Defendant retaliated against him "by [2] attempting to demote him, [3] raising questions about his supposed performance and supposed negative attitude regarding participation in its illegal profit taking scheme, and [4] making improper use of information about the health of his family members." Doc. 1 at ¶¶322, 324. However, in response to the motion to dismiss, Plaintiff did not argue that the latter three "retaliatory" acts are separate and distinct "retaliatory personnel actions" under the FWA. Instead, Plaintiff argues that those

6

actions contributed to the "toxic situation" that imposed conditions so intolerable that any reasonable person in Plaintiff's position would have resigned.[5]

To establish that a voluntary resignation amounts to a constructive discharge, Plaintiff must show that the working conditions were so intolerable that a reasonable person in his position would have felt compelled to resign. *Rutledge v. SunTrust Bank*, 262 F. App'x 956, 958-59 (11th Cir. 2008). This is an exceedingly high standard and "is higher than the standard for proving a hostile work environment." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).

The "toxic situation" alleged by Plaintiff does not come close to meeting this standard. Indeed, the circumstances of Plaintiff's employment are not remotely similar to the circumstances that courts have found to support a constructive discharge claim. *See, e.g., Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (finding that plaintiff was constructively discharged when she was "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers"); *Meeks v. Comput. Assocs. Int'l*, 15 F.3d

---

[5] Nevertheless, for sake of completeness, the Court finds that the latter three retaliatory actions do not qualify as "retaliatory personnel actions" under the FWA because they did not affect the terms and conditions of Plaintiff's employment and they would not have dissuaded a reasonable person from engaging in statutorily protected activity—which is the judicial gloss placed on the phrase "adverse employment action" in the context of Title VII retaliation claims. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Notably, the "threatened demotion" was withdrawn a month before Plaintiff resigned and the other two "retaliatory" actions appear to be much ado about nothing and clearly did not dissuade Plaintiff from continuing to object to Defendant's allegedly false and deceptive business practices.

1013, 1015, 1021-22 (11th Cir. 1994) (affirming district court's finding of constructive discharge when the plaintiff, a woman returning from maternity leave, was given an unjustified unsatisfactory work evaluation and written warning, and was then summoned to a meeting with her male supervisors, where they physically intimidated her and screamed in her face such that she was hit with their spit); *Alvarez v. Lakeland Area Mass Transit Dist.*, 406 F. Supp. 3d 1348, 1355 (M.D. Fla. 2019) (finding that plaintiff sufficiently pled intolerable working conditions when she alleged "micro-management, harassing emails, glaring, humiliation in front of coworkers, exclusion from meetings, a negative performance review, and denial of a promised raise, among other things").

Here, although Vitkofsky's criticisms of Plaintiff's attitude and job performance and his potentially unnecessary dissemination of his family confidential health information may be upsetting, these actions are not sufficiently intolerable to leave a reasonable person with no choice but to resign. *See, e.g.*, *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977-78 (11th Cir. 2003) (holding that a withdrawn reprimand, an offer to transfer the employee to another managerial role, and accurate statements of coworkers to the employee that the employer planned to fire him, among other conduct, was not sufficient to create intolerable working conditions); *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991) (holding that written reprimand, criticism from supervisors, and withdrawal

of customary support did not create intolerable working conditions, particularly given the employer's efforts to rectify the situation); *Boze v. Branstetter*, 912 F.2d 801, 804-06 (5th Cir. 1990) (holding that unwarranted criticism, poor performance evaluation, probation, and withdrawal of responsibilities did not create intolerable working conditions); *Wardwell v. Sch. Bd. of Palm Beach Cnty., Fla.*, 786 F.2d 1554, 1558 (11th Cir. 1986) (holding that failure to promote and imposition of increased workload did not create intolerable working conditions); *Blake v. City of Montgomery, Ala.*, 492 F. Supp. 3d 1292, 1307 (M.D. Ala. 2020) ("[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.").

Additionally, it is well established that voluntary resignation under threat of potential termination is not a constructive discharge. *See Jones v. Allstate Ins. Co.*, 707 F. App'x 641, 646 (11th Cir. 2017) ("Plaintiff's decision to voluntarily resign in the face of possible termination is not a constructive discharge. A resignation is voluntary as long as the plaintiff had a choice, even if the alternatives are unpleasant.") (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)); *see also Beltrami v. Special Couns., Inc.*, 170 F. App'x 61, 63 (11th Cir. 2006) (holding that employer's intent to fire an employee once he inevitably failed to complete a list of extremely difficult work objectives within 30 days did not create

intolerable working conditions). Moreover, because the threatened demotion was rescinded nearly a month before Plaintiff resigned, it is difficult to see how that could constitute an intolerable working condition at the time of Plaintiff's eventual resignation. *Cf. Fitz*, 348 F.3d at 977 ("A withdrawn reprimand, which has yielded no adverse consequences, is not a 'working condition' *at all*. We therefore have difficulty understanding how the withdrawn reprimand could amount to an 'intolerable' working condition." (emphasis in original)).

The Court did not overlook Plaintiff's argument that he had no choice but to resign because continuing his employment would have required him to participate in Defendant's fraudulent and deceptive business practices and could have exposed him to personal liability. The Court finds this argument—and the nonbinding cases on which it is based—unpersuasive for the reasons articulated by Defendant in its reply. *See also* Doc. 25 at 4 n.4 (noting that "the complaint does not plausibly allege that Plaintiff could have held been personally liable or criminally responsible for the alleged fraud and illegal activity that Defendant refused to cease despite his complaints" because "he alleges that he was able to continue sending what he considered to be more truthful information about the issues on which he complained to prospective clients rather than simply adhering to the 'company line'").

In sum, because Plaintiff has not plausibly alleged that he suffered a "retaliatory personnel action," he has not stated a claim under the FWA.[6] Thus, Count 1 of the complaint is due to be dismissed.

### FDUTPA Claim (Count 2)

Under FDUTPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. §501.204(1), Fla. Stat. To state a claim under FDUTPA, the plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

---

[6] Based on this conclusion, the Court need not decide whether the complaint plausibly alleges the other required elements of a FWA claim—protected activity or causation. However, for sake of completeness, the Court is not persuaded by Defendant's argument that Plaintiff did not plausibly allege that he engaged in protected activity because the concerns he expressed to management about Defendant's business practices do not amount to objections about an actual violation of law. Rather, the Court finds that the complaint specifically—and repeatedly—alleged that Plaintiff "objected to" the practices, *see, e.g.*, Doc. 1 at ¶¶8, 10, 202, 237, 239, 272, 274, 278, 317, 333, and that it plausibly alleges an actual violation of FDUPTA—at least with respect to the alleged false and deceptive practices directed prospective customers, *see, e.g., Berkley Vacation Resorts, Inc. v. Castle Law Grp., P.C.*, 2019 WL 5213310, at *6 (S.D. Fla. Aug. 15, 2019) (finding that the plaintiff adequately alleged a FDUTPA claim premised in part on the defendant's "false and deceptive marketing campaigns and fraudulent representations to solicit [potential clients]"). Likewise, the Court finds Defendant's argument on causation unpersuasive because it is apparent from the complaint that the reason Plaintiff did not want to continue working for Vitkofsky was directly related to his protected activity—indeed, the paragraph of the complaint cited by Defendant in support of its argument alleges that Vitkofsky "was one of the principal people who had retaliated against [Plaintiff]" in response to his complaints about Defendant's business practices.

Here, Defendant argues that Plaintiff lacks standing to assert a claim under FDUTPA because he is not a consumer, and even if he had standing, he did not sufficiently allege what Defendant did to damage him, and he did not allege that any of the alleged deceptive or unfair actions took place in Florida. Plaintiff responds that Florida courts no longer require a FDUTPA plaintiff to be a consumer or a Florida resident, and that the income he lost "via constructive discharge … because he resisted the kind of fraudulent practices FDUTPA prohibits" is recoverable under FDUPTA. The Court does not fully agree with either party's arguments, but the Court finds that the FDUPTA claim is due to be dismissed for two reasons.

First, although a FDUTPA plaintiff need not be a consumer, the unfair practice must still be directed at consumers. *See Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015); *see also Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen., Dep't of Legal Affs., State of Fla.*, 761 So. 2d 1256, 1260 (Fla. 3d DCA 2000) (observing that FDUTPA was enacted "to protect <u>consumers</u> against commercial wrongdoing" (emphasis added)). Here, Plaintiff bases his FDUTPA claim on the "adverse employment practices and damaging falsehoods" allegedly committed against <u>him</u>, not the unfair practices committed against <u>consumers</u>. *See* Doc. 1 at ¶327.

Second, a Florida appellate court has construed FDUTPA to preclude plaintiffs from recovering money damages and injunctive relief related to an

12

individual's loss of employment. *See Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004) (affirming dismissal of FDUPTA claim brought by employee of car dealership who was fired after purchasing a car from a competing dealership because even if it was unlawful for the dealership to discharge plaintiff for that conduct, FDUPTA does not provide for recovery of "consequential damages" and "[t]he [plaintiff's] loss of her employment is an indirect and 'consequential' result of the employer's alleged violation of the statute"). That interpretation of FDUPTA is binding on the Court and it forecloses Plaintiff's FDUTPA claim.[7]

The Court did not overlook the federal district court cases cited by Plaintiff for the proposition that loss of an employee's income from an employer's misconduct is recoverable under FDUTPA. *See Switala v. Rosenstiel*, 2017 WL 7792713 (S.D. Fla. Oct. 3, 2017); *Vasquez v. Joseph Cory Holdings, LLC*, 2016 WL 11221088 (M.D. Fla. Nov. 10, 2016); *Francois v. Gulf Coast Transp., Inc.*, 2016 WL 4097108 (M.D. Fla. Aug. 2, 2016); *Seijo v. Casa Salsa, Inc.*, 2013 WL 6184969 (S.D. Fla. Nov. 25, 2013). However, those cases are distinguishable because they all involved the alleged misclassification of the plaintiffs as independent contractors rather than employees, not the alleged constructive discharge of an employee who

---

[7] Notably, Plaintiff did not address *Smith* in its response even though the Court had relied on that case in determining that discovery should be stayed since Defendant's motion to dismiss was likely to be granted. *See* Doc. 25 at 5.

refused to participate in practices that allegedly violated FDUPTA. Indeed, the circumstances of this case are much more akin to those in *Smith* than the cases cited by Plaintiff

Accordingly, for the reasons stated above, the FDUPTA claim in Count 2 of the complaint is due to be dismissed.

<u>Massachusetts Common Law Claim (Count 3)</u>

Plaintiff also asserts a claim for wrongful discharge under Massachusetts common law. Plaintiff pleads this claim in the alternative to its Florida law claims, and he concedes that Massachusetts common law "becomes relevant only if this Court were to hold that Florida law does not apply." Doc. 27 at 38.

Neither party argues that the Court should apply anything other than Florida substantive law, and based on the allegations in the complaint, the Court sees no reason why Massachusetts common law would apply in this case because Plaintiff alleges that he "conducted most of his work for Defendant from Florida" and that his claims "arise from retaliation he suffered for complaints and objections that he made while in Florida about illegal conduct in violation of Florida law, and Defendant's retaliatory communications were sent to him and received by him while he was in Florida." Doc. 1 at ¶¶22, 23; *see also id.* at ¶18 (alleging that "Plaintiff … worked from Florida, and it was his conduct in Florida, including his objections and complaints about Defendant's fraudulent and deceptive practices, that resulted in the

retaliation against him."). Accordingly, Count 3 is due to be dismissed because Massachusetts common law does not apply to this case.[8]

## Conclusion

In sum, for the reasons stated above, the Court finds that the complaint should be dismissed because it fails to state a claim upon which relief can be granted. That, however, begs the question of whether the dismissal should be with or without prejudice.

Typically, a plaintiff should be given at least one opportunity to file an amended complaint, but a complaint can be dismissed with prejudice (and without leave to amend) when leave to amend would be futile. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332-33 (11th Cir. 2020). "Leave to amend would be futile if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *Id.* at 1332.

The Court "is not required to grant a plaintiff leave to amend [his] complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to

---

[8] In any event, Massachusetts law appears to be in accord with Florida law regarding the working conditions that are necessary to show that the plaintiff's voluntary resignation was actually a constructive discharge. *See GTE Prods. Corp. v. Stewart*, 653 N.E.2d 161, 168-69 (Mass. 1995) ("[I]n order for a constructive discharge to be found, the trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. The test is met if, based on an *objective* assessment of the conditions under which the employee has asserted he was expected to work, it could be found they were so difficult as to be intolerable.") (emphasis in original and internal quotations and citation omitted). Thus, even if Massachusetts law applied, Count 3 would be subject to dismissal on the merits for the same reason that Count 1 was dismissed.

amend nor requested leave to amend before the district court." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 936 (11th Cir. 2022) (quoting *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc)).  Here, Plaintiff did not seek leave to amend his complaint in the event the Court found it to be insufficiently pled, despite the fact that Defendant argued for dismissal with prejudice in its motion to dismiss and Plaintiff's response to the motion was filed after the Court determined in the Order Staying Discovery that the complaint was likely to be dismissed.  *See* Doc. 25 at 5 (noting that Plaintiff's forthcoming response would give him a chance to "persuade the Court that the complaint is adequately pled and/or <u>explain how any pleading deficiencies can be cured through an amended complaint</u>") (emphasis added).  Under these circumstances, the Court sees no reason to grant Plaintiff leave to file an amended complaint—particularly since it is hard to conceive what facts Plaintiff could add to his 74-page complaint to overcome the deficiencies detailed above.

Accordingly, it is **ORDERED** that:

1.     Defendant's motion to dismiss (Doc. 21) is **GRANTED** and the complaint is **DISMISSED with prejudice**.

2.     The Clerk shall close the case file.

**DONE and ORDERED** this 18th day of July, 2022.

_____
**T. KENT WETHERELL, II
UNITED STATES DISTRICT JUDGE**